UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JOSEPH NEIL BRONSON, JR., ) | CASE NO. 4:20-cv-914 |
| ) | |
| PETITIONER, ) | JUDGE SARA LIOI |
| ) | |
| vs. ) | |
| ) | MEMORANDUM OPINION AND |
| ) | ORDER |
| MICHAEL CARVALJAL, et al., ) | |
| ) | |
| RESPONDENTS. ) | |

Petitioner Joseph Neil Bronson, Jr. ("Bronson") is an inmate currently confined at the Federal Correctional Institution ("FCI") Elkton with a projected release date of May 3, 2025. *See* https://www.bop.gov/inmateloc/ (last visited 5-1-2020). Bronson has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking his immediate release from prison in light of circumstances surrounding the COVID-19 pandemic. (Doc. No. 1 ["Pet."].) He has also filed an "Emergency Motion for Preliminary Injunction and/or Protection Order and/or Temporary Restraining Order Pending Habeas Decision Ex Parte," (Doc. No. 2), and an "Emergency Motion for Release on Bail and Conditions Pending Decision on Habeas Corpus Decision for 'Exceptional Circumstances.'" (Doc. No. 3.)

This matter is before the Court to conduct the initial screening required by 28 U.S.C. § 2243. *See Alexander v. N. Bureau of Prisons*, 419 F. App'x 544, 545 (6th Cir. 2011). A petition will be denied "if it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." Rule 4 of the Rules Governing § 2254 Cases in the United States District

Courts (applicable to § 2241 petitions pursuant to Rule 1(b)).

In his petition, Bronson details his efforts to obtain care for medical issues—including "Hypertension, Edema, Congenitally Atrophic Kidney (leaving only one), hiatal hernia, and undiagnosed and persistent nerve damage"—since his arrival at FCI Elkton in 2019. (Pet. at 8.) Despite "multiple attempts to receive productive attention on these issues," Bronson insists that his medical conditions remained unresolved due to an "unwillingness to express effort [on the part of prison staff] in applying care." (*Id*.) Once COVID-19 "began to be an issue [n]ation-wide," Bronson claims he started to experience "shortness of breath, pain in his [diaphragm] area, and occasional morning bloody mucus." (*Id.* at 8, 12.) According to Bronson, staff at FCI Elkton have also refused to address these ailments. He further complains that he has been deprived outdoor recreation for more than forty-five (45) consecutive days, which Bronson suggests is essential to flushing out the harmful bacteria associated with COVID-19 from the lungs. (*Id.*)

In support of his petition, Bronson states that "B.O.P. Director Michael Cavajal who directs Warden Williams have been found by this court to have performed their duties with 'deliberate indifference' to the heath and safety of the [p]etitioner[] violating [the] 8th Amend[ment] right to be free" from cruel and unusual punishment." (*Id.* at 3.) Bronson appears to refer to a class action filed by inmates at FCI Elton, though he has misstated the nature of the Court's ruling. (*See Wilson v. Williams*, No. 4:20-cv-794.) On April 22, 2020, Judge James Gwin issued a preliminary injunction requiring officials at FCI Elkton to identify all members of a subclass of medically vulnerable inmates and determine whether they are eligible for immediate release or parole, or relocation to another BOP facility. (*See* Case No. 4:20-cv-794, Doc. No. 22

at 371-72.) Judge Gwin did not make any final determination as to the constitutionality of the actions of staff at FCI Elkton, and Bronson does not even appear to have been identified as a member of the subclass entitled to preliminary injunctive relief. (*Id*., Doc. No. 35-1 [List of Inmates in Subclass].)

With respect to the present habeas petition, Bronson concedes that he did not exhaust his administrative remedies before bringing this action, but suggests, without elaboration, that his concerns require "attention beyond the capability of [the] grievance procedure." ( Pet. at 2.) He does state that, on April 6, 2020, he deposited a request for a compassionate release into the prison mail system, and on April 18, 2020, he submitted an "alternatively formatted request for a compassionate release" into the prison and regular U.S. Mail systems. (*Id*. at 11.) He represents that as of the date his petition—April 29, 2020—he "has yet to receive [a] response to his compassionate release requests." (*Id*. at 12.).

It is well settled in the Sixth Circuit that before a prisoner may seek habeas corpus relief under § 2241, he must first exhaust his administrative remedies. *See Luedtke v. Berkebile*, 704 F.3d 465, 466 (6th Cir. 2013); -*Graham v. Snyder*, 68 F. App'x 589, 590 (6th Cir. 2003); *Little v. Hopkins*, 638 F.2d 953, 954 (6th Cir. 1981). Exhaustion serves the laudable goals of (1) protecting "administrative agency authority," by ensuring that an agency has an opportunity to review and revise its actions before litigation is commenced, preserving both judicial resources and administrative autonomy; and (2) promoting efficiency because "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *See Woodford v. Ngo*, 548 U.S. 81, 89, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006) (citing *McCarthy v. Madigan*, 503 U.S. 140, 145, 112 S. Ct. 1081, 117 L. Ed. 2d 291

(1992)).

The BOP has outlined the relevant administrative exhaustion process in its Program Statement No. 5050.50 *See* U.S. Department of Justice, Federal Bureau of Prisons, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 35832 and 4205(g) (Jan. 17, 2009) http://www.bop.gov/policy/progstat/5050_050_EN.pdf. First, a request for a release/reduction in sentence must be submitted to the warden. 28 C.F.R. § 571.61(a). If the warden denies the request, he must do so in writing and the defendant may appeal the decision pursuant to the BOP's Administrative Remedy Procedure. 28 C.F.R. § 571.63(a) (citing 28 C.F.R. part 542, subpart B). Bronson concedes that he has not yet received a response from the warden on his compassionate release requests. (Pet. at 12.) If the warden approves the inmate's request, a later denial by the BOP's general counsel, or its director, is considered a final administrative decision, and the defendant's administrative remedies are exhausted at that time. 28 C.F.R. § 571.63(b-c). Bronson does not assert that his request has been denied by the BOP general counsel or director. Accordingly, the Court cannot find that he has fully exhausted his administrative remedies.

Bronson indirectly suggests in his petition that the Court should waive the exhaustion requirements. (*See* Pet. at 13.) The Court has already considered the subject of exhaustion waiver against the backdrop of the COVID-19 health crisis in the context of motions brought 28 U.S.C. § 3582 for compassionate release. There, the Court joined the majority of courts that have found that the exhaustion requirement contained in § 3582(c)(1)(A) could not be waived. In so ruling, the Court underscored the fact that "the exhaustion requirement serves the important purpose of allowing the BOP—an agency that is in a better position to understand an inmate's health and

circumstances relative to the rest of the prison population and identify 'extraordinary and compelling reasons' for release—the opportunity to address such requests in the first instance." *See, e.g., United States v. Black*, No. 5:18-cr-646-1, 2020 WL 1930149, at *2-3 (N.D. Ohio Apr. 21, 2020) (citing, among authority, *United States v. Raia*, 954 F.3d 594 (3rd Cir. 2020)). The Court finds that the prudential concerns surrounding the enforcement of the exhaustion requirement for motions brought pursuant to 28 U.S.C. § 3582 apply equally to habeas petitions seeking similar relief under 28 U.S.C. § 2241.[1] Denial of Bronson's petition without prejudice for failure to exhaust his administrative remedies, therefore, is warranted. *See, e.g., Simmons v. Warden, FCI-Ashland*, No. 0:20-040-WOB, 2020 WL 1905289, at *3 (E.D. Ky. Apr. 17, 2020) (denying without prejudice defendant's habeas petition, pursuant to 28 U.S.C. § 2241, for immediate release due to COVID-19 for failure to exhaust administrative remedies); *see also Burke v. Hall*, No. 3:19-cv-01108, 2020 WL 553727, at *1 (M.D. Tenn. Feb. 4. 2020 (denying without prejudice § 2241 habeas petition seeking immediate release because it was "apparent on the face of Burke's . . . petition that he did not exhaust his administrative remedies").

In reaching this conclusion, the Court observes that the BOP has "begun immediately reviewing all inmates who have COVID-19 risk factors, as described by the CDC, starting with inmates incarcerated at . . . FCI Elkton . . . to determine which inmates are suitable for home confinement." Fed Bureau of Prisons, Home Confinement,

---

[1] The Court does not interpret the present petition as seeking a compassionate release under 28 U.S.C. § 3582, and, in any event, such a motion must be made to the court that sentenced Bronson. *See Justice v. Sepanek*, No 12-CV-74-HRW, 2013 WL 954115, at *5 (E.D. Ky. Mar. 11, 2013) (collecting cases providing that motions for compassionate release must be directed to the sentencing court); *see also* 18 U.S.C. § 3582(c) (providing the limited circumstances under which the court that imposed a sentence may modify that sentence). Given the fact that either avenue for relief—a § 2241 habeas petition or a motion for a compassionate release—is foreclosed to Bronson until he fully exhausts his administrative remedies, the Court need not determine whether his petition is more appropriately characterized as a request for compassionate release under 28 U.S.C. § 3582.

www.bop.gov/resources/news/20200405_covid19_home_confinement.jsp, April 5, 2020 (last accessed 4-28-2020).[2] The BOP has instructed that "inmates do not need to apply to be considered for home confinement" under this directive, but "any inmate who believes they are eligible may request to be referred to Home Confinement and provide a release plan to their Case Manager." *Id*. The fact that the BOP has already begun to identify vulnerable inmates for release to home confinement represents further proof that it is in the best position to quickly consider whether Bronson should be released due to COVID-19.

For the foregoing reasons, Bronson's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 is denied without prejudice. Bronson's emergency motions for injunctive relief and immediate release are denied as moot. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) than an appeal from this decision could not be taken in good faith.

**IT IS SO ORDERED**.

Dated: May 1, 2020

                                        **HONORABLE SARA LIOI**
                                        **UNITED STATES DISTRICT JUDGE**

---

[2] According to the BOP's website, the BOP has already increased home confinement by more than 40% since March 2020. *Id*. In fact, under § 12033(b)(2) of the Coronavirus Aid. Relief, and Economic Security Act ("CARES" Act), Pub. L. No. 116-136, enacted March 27, 2020, the Attorney General now has the authority to "lengthen the maximum amount of time for which the Director [of the BOP] is authorized to place inmates in home confinement under 18 U.S.C. § 3624(c)(2) . . . ."